**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| **TYSINGER MOTOR COMPANY, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 2:04cv202** |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## OPINION

Federal law requires any business accepting $10,000 or more in cash to file a Form 8300 reporting details of the transaction to the Internal Revenue Service ("IRS"). 26 U.S.C. § 6050I.  During tax years 1999 and 2000, plaintiff Tysinger Motors, Inc. ("Tysinger") failed to file the required form in four of eight reportable transactions. These failures occurred despite Tysinger's efforts to design and implement a system that would ensure the filing of Form 8300 whenever required.

Because Tysinger failed to file Form 8300 in these four instances, the IRS assessed a penalty of $100,000 for noncompliance.  Tysinger paid the fine and now brings this action to recover a refund.  Based on the evidence introduced by the parties at a bench trial and the application of relevant law, the Court **FINDS** that Tysinger did not "intentionally disregard" its filing obligations as required by the statute that authorizes the penalties.  26 U.S.C. §  6721(e).  The Court therefore will order the refund that Tysinger seeks.

## I.  FINDINGS OF FACT

Tysinger is a family owned automobile dealership located in Hampton, Virginia. In 1999 and 2000, it held franchises to sell and service Dodge, Nissan and Mercedes-Benz vehicles.  The company's President is Mark Tysinger, who is the third generation of the family to own and operate the dealership.  Mr. Tysinger is a member of the Virginia State Bar and practiced law with the prominent Norfolk firm of Kaufman & Canoles before returning to the family business.

Tysinger's interaction with the IRS over the reporting of cash transactions began in 1992.  As part of its standard procedures, the IRS conducts Compliance Reviews to determine whether particular businesses are filing Form 8300 as required.  In the course of a Compliance Review conducted at Tysinger in 1992 (for tax years 1990 and 1991), the IRS discovered that Tysinger had not reported several transactions involving cash in excess of $10,000.

The IRS conducted a second Compliance Review at Tysinger in 1996.  The IRS again discovered that Tysinger had been inconsistent in its filing of Form 8300.  The IRS assessed nominal penalties against Tysinger and required Mark Tysinger and the company's Chief Financial Officer, Wayne Zimmerman, to sign an "Acknowledgment of Requirement to File Form 8300."  The Acknowledgment stated, in relevant part:

> I have been advised that any receipt of currency exceeding $10,000, whether in one installment or multiple installments by or on behalf of the same person, should be reported to the Internal Revenue Service, by using Form 8300, by the 15th day after the date of the transaction. . . .  I have also been advised that civil and criminal penalties may be imposed for failure to file a report or to supply information, structuring transactions, and for filing a false or fraudulent report.

After the IRS completed its 1996 Compliance Review, Mark Tysinger directed the implementation of a system that would identify each cash transaction in excess of $10,000 and spark the filing of a Form 8300.  He delegated this task to CFO Zimmerman who appeared well-qualified to design and implement such a system.  Mr. Zimmerman is an accountant who had practiced with a CPA firm that specialized in automobile dealerships.  He then went to work for a major automotive group in the Baltimore, Maryland area where he served as the number two accounting executive. That company, Fox Automotive, had a Form 8300 compliance system.  Mr. Zimmerman subsequently joined Tysinger as its CFO.

Whenever Tysinger sells a vehicle, the customer is taken to the Finance and Insurance ("F&I") Department to close the deal.  The F&I Department arranges vehicle financing, sells additional items, such as extended warranty plans and insurance, and effects the actual transfer of title.   Because the F&I Department sees every deal and handles all financial arrangements related thereto, its managers are in the best position to identify each and every sale involving more than $10,000 in cash.  Mr. Zimmerman therefore focused the new cash reporting and compliance system on this department of the dealership.  He instructed the F&I Managers to report to him the details of each cash transaction of $5,000 or more so that he (Zimmerman) could personally prepare and file the Form 8300.  Mr. Zimmerman adopted the lower threshold so that he would be in a position to review any questionable situations.

Mr. Zimmerman's Form 8300 Compliance System ("Zimmerman System") involved far more than oral instructions.  Mr. Zimmerman personally conducted training sessions for Tysinger personnel in which he explained the prohibition against structured

3

transactions and emphasized the need to report each and every transaction involving $5,000 or more in cash.  All personnel (not just F&I Managers) were asked to inform Mr. Zimmerman about such cash transactions.  He created a cash transaction checklist that the F&I Managers were given to complete.  He also drafted and circulated to Tysinger personnel a memorandum that described the new cash reporting and compliance system.  Finally, the requirement to identify and report all cash transactions in excess of $5,000 was added to Tysinger's Employee Handbook.

After designing the system, Mr. Zimmerman  described it to the IRS agent who conducted the 1996 review.  The agent advised him that the system "would be fine."

During tax years 1999 and 2000, Tysinger sold 3,000 vehicles.  Of this number, eight involved cash down payments of $10,000 or more.  Mr. Zimmerman personally filed a Form 8300 for four of the eight reportable transactions.  The other four transactions were not reported to the IRS apparently because the F&I Managers responsible for these sales did not bring them to the attention of Mr. Zimmerman. There is no evidence that any of the four unreported transactions involved money laundering or other illicit activity.  There is also no evidence that any of these customers requested, nor did anyone at Tysinger promise, that the customers' cash down payments would not be reported to the IRS.

The four unreported transactions are summarized as follows:

**Zhou**:  On January 28, 1999, Simon Zhou placed a cash down payment of $14,050 on a vehicle that cost $46,050.  He obtained a loan for the balance owed.  The F&I Managers responsible for the transaction did not complete the cash checklist as required by the Zimmerman system.

4

**Ros**:  On March 20, 2000, Sao Pen Ros placed a cash down payment of $10,615.47 on a vehicle that cost $41,615.47.  He obtained a loan for the balance owed.  The F&I Manager responsible for the transaction did not complete the cash checklist as required.  However, an accountant in the main office (Tammy Robbs) placed a handwritten note in the file that stated: "PLEASE FILL OUT A FORM 8300."

**Gentry**:  On April 7, 2000, Timothy Gentry placed a cash down payment of $12,525.81 on a vehicle that cost $30,525.81.  He obtained a loan for the balance owed.  The F&I Manager responsible for the transaction did not complete the cash checklist as required.

**Arruda**:  On June 23, 2000, Angela Arruda placed a cash down payment of $14,000 on a vehicle that cost $32,398.20.  She obtained a loan for the balance owed.  The F&I Manager responsible for the transaction did not complete the cash checklist as required.

The four unreported cash transactions were discovered when the IRS performed a Compliance Review for tax years 1999 and 2000.[1]  The review was performed by Agent Kimberly Young who testified at trial that Tysinger personnel were forthcoming and provided her with all of the documents that she requested.  Upon completion of her review, Agent Young recommended that the IRS assess against Tysinger the maximum

---

[1]Tysinger filed the four Form 8300s immediately after learning of the problem. The company then analyzed the Zimmerman system to identify its deficiencies.  The problem lay in the system's lack of redundancy.  The system relied solely on the F&I Managers to identify and bring to Mr. Zimmerman's attention reportable transactions. Tysinger changed the system to make the billing clerk and the cash clerk also responsible for checking all cash deals and reporting qualifying transactions to Mr. Zimmerman.  In addition, the cash checklist was made a mandatory part of every deal, not just for cash payments in excess of $5,000.

penalty per failure to file ($25,000)  for each of the four unreported transactions.  Agent Young made this recommendation even though she never concluded that any member of Tysinger management made a conscious decision to evade the cash reporting requirements.  Her recommendation was based on three facts: (1) Tysinger had past violations; (2) Mark Tysinger and CFO Zimmerman had acknowledged in writing the reporting requirements; and (3) the Zimmerman System did not work in these four instances.

The IRS concurred in Agent Young's recommendation and assessed against Tysinger $100,000 in penalties for failure to file the four Form 8300s.  The IRS also assessed $5,214.93 in penalties for Tysinger's failure to notify the four customers that their cash down payments would be reported to the IRS.  After an unsuccessful administrative appeal of the penalties, Tysinger paid them and filed this action pursuant to 28 U.S.C. § 1346(a)(1) to obtain a court ordered refund of the $100,000.  Tysinger does not contest in this action the penalty for failure to notify its customers.

## II.  CONCLUSIONS OF LAW

Failure to file an informational return, such as Form 8300, ordinarily subjects the defaulting party to a penalty of $50 per return, up to a maximum of $250,000 per calendar year.  26 U.S.C. § 6721(a).  However, when the IRS deems the failure to file to be an "intentional disregard" of the statute's requirements, it may enhance the penalties assessed up to the greater of $25,000 per return or the amount of cash received in the transaction, up to $100,000 per transaction.  26 U.S.C. § 6721(e)(2)(C).  As discussed above, the IRS assessed the maximum penalty of $25,000 per

transaction for each of the four Form 8300s that Tysinger failed to file.

A.      Did Tysinger Intentionally Disregard Its Filing Obligations?

An IRS' assessment is presumed correct so long as it is not arbitrary.  *Dellacroce v. Commissioner*, 83 T.C. 269, 1984 WL 15606 (Tax Court 1984).  As a result, the taxpayer challenging the assessment bears the burden of proving that the IRS acted improperly.  *Welch v. Helverling*, 290 U.S. 111, 115 (1933).  Relying on the Fourth Circuit's decision in *Cebollero v. Commissioner*, 967 F.2d 986 (4th Cir. 1992), and its progeny, Tysinger urges the Court to adopt a shifting burden of proof.  Under the *Cebollero* formula, the taxpayer bears the burden of proving only that the assessment is erroneous.  If successful, the burden then shifts to the IRS to prove the amount of tax actually owed.  *Id.* at 990.

The Court believes that the burden shifting scheme outlined in *Cebollero* is inapplicable to a case such as this one that does not involve the underpayment of tax.  Indeed, the *Cebollero* court expressly limited its holding to deficiency cases.  *Id*.  When only a penalty is being challenged, there is no "amount of tax actually owed" for the IRS to prove.  This Court,  like Judge Lake in *DeGuerin v. United States*, 214 F. Supp. 2d 726, 733-34 (S.D. Tex. 2002), will leave the burden of proof solely on a taxpayer who challenges a penalty assessed under 26 U.S.C. § 6721(e)(2)(C).

Section 6721(e)(2)(C) does not define "intentional disregard," but the regulations promulgated thereunder by the Department of the Treasury state that "[a] failure is due to intentional disregard if it is a knowing or willful -- (i) [f]ailure to file timely, or (ii)

[f]ailure to include correct information."  26 C.F.R. § 301.6721-1(f)(2).  Whether such a

failure is knowing or willful "is determined on the basis of all the facts and

circumstances in the particular case."  26 C.F.R. § 301.6721-1(f)(2)(ii).  The Treasury

Regulations set forth examples of the facts and circumstances that may be taken into

account:

> (3)  Facts and circumstances considered.  The facts and
> circumstances that are considered in determining whether a
> failure is due to intentional disregard include, but are not
> limited to --
>
> (i) Whether the failure to file timely or the failure to include
> correct information is part of a pattern of conduct by the
> person who filed the return of repeatedly failing to file timely
> or repeatedly failing to include correct information;
>
> (ii)  Whether correction was promptly made upon discovery
> of the failure;
>
> (iii)  Whether the filer corrects a failure to file or a failure to
> include correct information within 30 days after the date
> of any written request from the Internal Revenue Service
> to file or to correct; and
>
> (iv)  Whether the amount of the information reporting
> penalties is less than the cost of complying with the
> requirement to file timely or to include correct information
> on an information return.

26 C.F.R. § 301.6721-1(f)(3).

The factors identified in the Treasury Regulations define "intentional disregard"

as a voluntary, rather than mistaken, failure to comply with the statutory filing

requirements.  *DeGuerin*, 214 F. Supp. 2d at 738-39.  The Second Circuit, which is the

only federal appeals court to address the issue directly, agrees with the regulatory

interpretation of the statute.  In *Gerald B. Lefcourt, P.C. v. United States*, 125 F.3d 79

(2d Cir. 1997), the Court stated:

> [T]he "intentional disregard" set forth in § 6721's penalty
> provision means conduct that is willful, a term which in this
> context requires only that a party act voluntarily in
> withholding requested information, rather than accidentally
> or unconsciously.  Once it is determined . . . that the failure
> to disclose client-identifying information was done
> purposefully, rather than inadvertently, it is irrelevant that the
> filer may have believed he was legally justified in withholding
> such information.  The only question that remains is whether
> the law required its disclosure.

*Id.* at 83.  This civil statute does not require, as Tysinger suggests, proof of intent to

violate the law.  *Id.*; *see also Prino v. Simon*, 606 F.2d 449, 451 (4th Cir. 1979) (holding

that "willful" conduct under Gun Control Act does not require proof of "malicious intent");

*Hartman v. United States*, 538 F.2d 1336, 1341 (8th Cir. 1976) (holding that "willful"

failure to pay corporate withholding taxes does not require that taxpayer "act with evil or

fraudulent intent"); *cf. Arthur Andersen, LLP v. United States*, 544 U.S. 696, ___, 125 S.

Ct. 2129, 2136 (2005) (observing that criminal liability typically requires that defendant

be conscious of his wrongdoing) .

Applying the regulatory and case law definitions set forth above, the Court holds

that Tysinger has carried its burden of proving that it did not intentionally disregard its

obligation to file Form 8300s in the four transactions at issue.  There is no proof that

anyone at the company made a conscious decision not to report the transactions; the

failures to report were simply mistakes.  Tysinger's desire to comply with the law is

demonstrated by its efforts to set up a system that would identify reportable

transactions.  Tysinger's intent is further demonstrated by the fact that it filed a Form

8300 for half the reportable transactions.  That the compliance system had an internal

flaw which resulted in its not working one hundred percent of the time does not prove

that it was intended to be a sham.  The IRS has produced no evidence from which the

Court could even infer that Mr. Zimmerman intentionally designed a flawed compliance

system.

In recommending the maximum fine, Agent Young relied upon Tysinger's prior

defaults and its executives' general knowledge of Form 8300.  Given this predicate, the

IRS considered any subsequent failure to file automatically willful.  Such an approach

impermissibly changes an intent-based statute into one of strict liability.  Because this is

contrary to the plain language of the statute, the IRS' initial reasoning is flawed.

In an effort to save its case, the IRS effectively disavows Agent Young's

reasoning by arguing (correctly) that it is not bound by the conclusions of its field

agents.  *See Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987).  The IRS asks

the Court to instead make a finding that CFO Zimmerman (unlike the company as a

whole) did not make a mistake because he intentionally did not complete and file the

four Form 8300s at issue.[2]  The IRS bases this factual contention on the testimony of

Tammy Robbs, a former Tysinger employee.  Ms. Robbs knew about some of the cash

transactions because she was responsible for opening the office safe where cash was

placed for safekeeping before being deposited in the Bank.  Ms. Robbs testified that

she advised Mr. Zimmerman of more than one reportable transaction by placing sticky

---

[2]The IRS' argument assumes that Mr. Zimmerman's omissions are imputed to Tysinger.  While a corporation can only act through its employees and agents, such imputation is not automatic when dealing with the assessment of tax penalties.  *See, e.g.*, *In re Am. Biomaterials Corp.*, 954 F.2d 919, 927 (3d Cir. 1992); *Kruse, Inc. v. United States*, 213 F. Supp. 2d 939, 942-43 (N.D. Ind. 2002).

notes on his telephone and leaving the deal folders in his office.  (Tr. at 82-84).  In the case of the Ros transaction, Ms. Robbs placed a note in the deal folder which stated, "PLEASE FILL OUT A FORM 8300."  (Tr. at 81).

Mr. Zimmerman testified under oath that he never refused to file a Form 8300 when he knew about a qualifying cash transaction.  Ms. Robbs' testimony does not, as the IRS contends, necessarily contradict Mr. Zimmerman's recollection.  Mr. Zimmerman testified that he was extremely busy in 1999 and 2000 with Tysinger's Nissan dealership and was often out of the office.  Ms. Robbs' notes could easily have been overlooked in such a hectic environment.  This explanation makes more sense than the alternative explanation, especially when one considers that neither Mr. Zimmerman nor the dealership had anything to gain from not filing the Form 8300s. Indeed, Tysinger filed the form in four of the eight instances where it was required.

The IRS next contends that Tysinger's F&I Managers and Mr. Zimmerman consciously decided not to follow the Zimmerman System implemented in 1996.  The IRS bases this conclusion on two items of proof.  First, when advised by Agent Young that four qualifying transactions went unreported, Mr. Zimmerman said of the F&I Managers, "They just don't care."  (Tr. at 106).  Second, certain F&I Managers often failed to fill out the cash checklists that were to be placed in each file.  Neither item (whether considered together or separately) proves intentional disregard.

Sloppiness is not the same as willfulness, particularly in a case such as this one where the business had extraordinarily few cash transactions.  Less than one-half of one percent (8 out of 3000) of Tysinger's sales during 1999 and 2000 involved reportable amounts of cash.  It is not surprising that the employees on the front lines

11

failed to cross every "t" and dot every "i" on those rare occasions when down payments

were made with cash.  Nor can a reasonable trier of fact (which of course I am) base a

conclusion of willfulness on Mr. Zimmerman's understandable expression of

exasperation when he learned that four transactions (out of 3000) had gone awry.  His

statement does not prove what the F&I Managers themselves actually knew or

intended.


B.      Did Tysinger Have Reasonable Cause Not to File the Form 8300s?

        Even if Tysinger intentionally disregarded its obligation to file the Form 8300s, it

still may avoid the penalties if its failure to report the cash transactions was "due to

reasonable cause and not to willful neglect."  26 U.S.C. § 6724(a); *see Lefcourt*, 125

F.3d at 83-84;  *DeGuerin*, 214 F. Supp. 2d at 739-43.  The Treasury Regulation

implementing this mandatory waiver provision requires the taxpayer to prove: (1) that

significant mitigating factors excuse the failure to file; or (2) the failure to file arose from

events beyond the taxpayer's control.  The taxpayer must also prove that he acted in a

"responsible manner" both before and after the failure occurred.  26 C.F.R. § 301.6724-

1(a)(2).  Acting in a responsible manner means:

> (i) [t]hat the filer exercised reasonable care, which is that
> standard of care that a reasonably prudent person would
> use under the circumstances in the course of its business
> in determining its filing obligations . . . and
>
> (ii) [t]hat the filer undertook significant steps to avoid or mitigate
> the failure.

26 C.F.R. § 301.6724-1(d).

        Because the Court has found that Tysinger did not "intentionally disregard" its

obligation to file the Form 8300s, it need not decide whether section 6724(a)'s mandatory waiver of penalties applies in this case.

### III. CONCLUSION

For the reasons set forth above, Tysinger has proven by a preponderance of the evidence that it did not act with "intentional disregard" in failing to file the Form 8300s. Accordingly, the Court has entered a separate Order (Docket No. 26) awarding Tysinger the sum of $100,000, plus prejudgment interest to run from the date that Tysinger initially paid the penalty.

The Clerk is **DIRECTED** to forward a copy of this Opinion to all counsel of record.

**IT IS SO ORDERED.**

_____/s/_____
Walter D. Kelley, Jr.
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 6, 2006